UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD B STEPHENS,

Plaintiff,

v.

CAROLYN COLVIN,

Defendant.

Case No. 13-cv-05156-RS

**ORDER REMANDING FOR FURTHER PROCEEDINGS**

# I. INTRODUCTION

Plaintiff Edward B. Stephens appeals the Social Security Commissioner's final decision denying his request for supplemental security income (SSI) disability benefits. The parties have cross-moved for summary judgment. Stephens seeks reversal of the Administrative Law Judge's (ALJ's) ruling, or in the alternative, that this case be remanded. Because substantial evidence does not support all of the ALJ's findings, the matter is remanded for further proceedings.

# II. BACKGROUND[1]

Stephens alleges he became disabled in October 2009 due to mental impairments and stopped working at the seal and coating company, where he had been employed for nine years, that same month. (AR 198.) He began to see a doctor in 2010 for his diabetes and mood swings, and further testified that while in school he suffered from dyslexia, struggled with writing, and

---

[1] This synopsis is based on the certified administrative record ("AR").

was placed in special education. He also experiences racing thoughts and struggles to concentrate for longer than fifteen or twenty minutes at a time. (AR 207.) According to both Stephens and his mother, he has trouble getting along with others, and has lost all of his past jobs due to his temper. (AR 59-60, 196.)

A single parent, Stephens cares for his six-year-old daughter on a daily basis. (AR 55.) He takes responsibility for dressing, feeding and getting his daughter to school, among other aspects of her life. He often sits on the porch while his daughter plays outside, or watches television while she plays on the floor. (AR 62.) Stephens testified that he usually watches television for three to four hours a day. *Id.* He also routinely shops for groceries, performs household chores, and cooks. (AR 61.) Stephens' mother testified that her son struggles to read, and that she pays his bills. (AR 195.)

Stephens filed an application for Social Security disability benefits in November 2010. The ALJ denied his request, and the Appeals Council declined to grant Stephens' request for review, rendering the ALJ's findings the Commissioner's final decision. Stephens moves for summary judgment or, in the alternative, to remand for further administrative proceedings. The motion, properly construed as an appeal, seeks reversal of the ALJ's decision, and a finding that Stephens is "disabled" under the Social Security Act.

### III. LEGAL STANDARD

A. <u>Standard for Reviewing the Commissioner's Decision.</u>

The Commissioner's decision to deny benefits is reviewed pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if it is supported by substantial evidence and grounded in correct legal standards. *Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995). The term "substantial evidence" means "more than a mere scintilla but less than a preponderance," or "such reasonable evidence that a reasonable mind might accept as adequate to support the conclusion." *Id.* at 523. When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992). Where evidence

supports more than one rational interpretation, however, the Court must defer to the ALJ's decision. *Id.* at 1258.

Legal error exists when an administrative court breaches its "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," resulting in non-harmless error to the applicant. *Biley v. Comm'r of Soc. Sec.,* 2012 WL 4808439, *4 (N.D. Cal. 2012) (citation omitted). That special duty is only triggered "when the record is inadequate to allow for proper evaluation of the evidence." *Id.* (citation omitted).

If the ALJ's decision is not based on substantial evidence or contains legal error, the reviewing court may remand for further evidence, or enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g); *see also Biley,* 2012 WL 4808439 at *4. A social security case should be remanded if additional proceedings can remedy defects in the original administrative proceedings, while reversal is appropriate if rehearing simply would delay receipt of benefits. *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981).

B. <u>Standard for Determining Disability.</u>

A person qualifies for disability insurance benefits under the Social Security Act if he or she establishes an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step, sequential evaluation process, through which the ALJ considers: 1) whether the claimant is ineligible for being engaged in substantial gainful activity[2]; 2) whether the claimant is ineligible for not having a medically "severe impairment" or combination thereof; 3) whether the claimant's impairment or combination of impairments meets or medically equals the impairment criteria listed in 20 CFR

---

[2] Substantial gainful activity (SGA) is work that involves significant physical or mental activities performed for pay or profit. *See* 20 C.F.R. § 404.1520(b); *see also* 20 C.F.R. § 404.1572 (elements of SGA).

Part 404, subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing her previous work; and 5) whether the claimant is able to perform other work in the national economy, considering his age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the claimant's residual functional capacity (RFC) and apply it during steps four and five to make a final disability determination.[3] *Lingenfelter v. Astrue,* 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(4), which describes the five-step process). A claimant who reaches step four and demonstrates that he cannot perform past relevant work has made a prima facie showing of disability. The burden then shifts to the Commissioner at step five to demonstrate the claimant can perform other SGA. *Drouin,* 966 F.2d at 1257; 20 C.F.R. §§ 404.1520, 416.920.

## IV. DISCUSSION

Following this five-step inquiry, the ALJ first determined Stephens has not engaged in SGA since filing his application for benefits. The ALJ found at step two that Stephens suffers from severe impairments, including an organic mental disorder, affective disorder, anxiety disorder, and polysubstance addiction disorder in partial remission. At step three, the ALJ concluded that Stephens lacks an impairment that meets or equals those enumerated via federal regulation. The ALJ's step four inquiry resulted in a finding that Stephens has sufficient RFC to engage in simple, repetitive tasks requiring occasional contact with supervisors, co-workers, and the public. Based on his RFC, the ALJ then determined Stephens is unable to perform any past relevant work.

The ALJ concluded at step five, however, that the national economy contains jobs in significant number that Stephens could perform given his age, education, work experience, and RFC. To reach this finding, the ALJ relied on the testimony of a vocational expert (VE), who determined that Stephens could work as a hand packager or product assembler, despite his

---

[3] A claimant's RFC represents "what he can still do despite his physical, mental, nonexertional, and other limitations." *Cooper v. Sullivan,* 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

acknowledged limitations. The vocational expert testified that there are an estimated 1,700 positions for these two occupations in the northern San Francisco Bay Area, and 475,000 such positions nationally. The ALJ concluded that because Stephens could successfully adjust to such an occupation, he is not "disabled" under the Social Security Act.

Stephens now contends on appeal that because the RFC finding was not based on substantial evidence and contained legal error, the ALJ incorrectly determined at step five that he is not disabled. More specifically, Stephens argues that the ALJ improperly: (1) rejected his treating physician's medical opinion; (2) discounted his treating therapist's opinion; (3) omitted certain findings regarding his mental limitations from the RFC determination and vocational hypotheticals delivered to the VE; (4) discounted the credibility of Stephens' testimony as to his symptoms; (4) disregarded the lay testimony of Stephens' mother; and (5) failed adequately to develop the record.

A. Weighing of Treating Physician's Testimony.

The ALJ is responsible for determining credibility, reconciling medical testimony conflicts, and resolving ambiguities. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (citation omitted). If rejecting the uncontroverted medical opinion of a claimant's physician, the ALJ must present clear and convincing reasons for that decision. *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). The ALJ may reject a treating physician's opinion in favor of another examining physician's conflicting opinion only if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* (citation omitted); *see also Lev v. Astrue*, C 09-05074 RS, 2010 WL 3037261, at *6 (N.D. Cal. July 30, 2010) (an ALJ may disregard a treating physician's opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his or her interpretation thereof, and making findings").

Neither of the two reasons the ALJ provides for rejecting the treating physician Dr. Athale's testimony is supported by substantial evidence, let alone clear and convincing reasons. The first is an ostensible contradiction between the treating physician's 2012 diagnosis of

osteoarthritis and Stephens' 2010 indication that he had no history of arthritis.[4] The second is a conclusory statement that "little weight" must be given to Dr. Athale's "opinion and extreme assessment because the record, to include her treatment or progress notes, does not support it." (AR 24.)

Yet the first reason is based on a form completed in November 2010 by Valerie Cahill, a marriage and family therapist (MFT) who did not treat Stephens. (*See* AR 479.) A report completed by a non-treating therapist does not constitute a conflicting medical opinion. *See* 20 C.F.R. § 404.1513(d). Dr. Athale's osteoarthritis diagnosis thus qualifies as an uncontroverted medical opinion, requiring that the ALJ provide "clear and convincing reasons" for discrediting the treating physician's findings. *See Thomas,* 178 F.3d at 957. Merely pointing out the apparent contradiction falls far short of meeting this standard.

Indeed, the record reflects less than "clear and convincing" evidence that Dr. Athale's diagnosis was incorrect. It is unclear, for example, why Dr. Athale's osteoarthritis diagnosis necessarily conflicts with the 2010 statement, which could merely reflect Stephens' ignorance as to his medical history. It seems quite plausible that Stephens was unaware in 2010 of his condition, despite actually having a history of arthritis, and that Dr. Athale later diagnosed the condition in 2012. (*See* AR 460.) Moreover, there is evidence in the record to support Dr. Athale's diagnosis. A different MFT indicated in 2011 that Stephens did suffer from arthritis. (AR 510, 512.) Stephens himself also testified that he is "not supposed to be on [his] knees very long, so [he] got a note from the doctors to go back to the house early so [he] could go back and relax," and that he "can't stay on [his] legs that long before they start hurting." (AR 62, 65.)

The ALJ's second reason for rejecting Dr. Athale's opinion—that it is unsupported by the record—likewise lacks sufficient explanation. Because Dr. Athale's general assessment of Stephens' mental limitations does conflict with other medical opinions, the "clear and convincing"

---

[4] "Dr. Athale wrote that the claimant had been diagnosed with . . . osteoarthritis [along with several other conditions]. Yet the claimant indicated in November 2010 that he did not have a history of arthritis." (AR 24.)

standard does not apply.[5]  The ALJ is nevertheless obligated to articulate "specific, legitimate reasons . . . based on substantial evidence in the record" for rejecting Dr. Athale's testimony.  *See Thomas,* 178 F.3d at 957.  The ALJ's vague criticism of Dr. Athale's diagnosis as an "extreme assessment" is not backed up with any specific analysis, and is far from a "detailed and thorough summary of the facts and conflicting clinical evidence."[6]  *See Lev*, 2010 WL 3037261 at *6.

Dr. Athale's testimony, if credited, could establish that Stephens is disabled; indeed he concluded that Stephens' "severe" limitations in maintaining attention and concentrating preclude him from working.  The ALJ's repudiation of Dr. Athale's testimony therefore constitutes non-harmless error.

B. Weighing of Treating Therapist's Opinion.

Testimony from a treating therapist constitutes an "other source" under 20 C.F.R. § 404.1513(d).  The ALJ may accord opinions from "other sources" less weight than opinions from acceptable medical sources.  *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  To discount completely the testimony of an "other source," however, an ALJ must "provid[e] specific reasons, germane to the witness," *Talley v. Astrue*, 400 F. App'x 167, 169 (9th Cir. 2010), and furthermore draw support from substantial evidence, *Fleming v. Astrue*, 303 F. App'x 546, 548 (9th Cir. 2008).

Stephens' treating therapist, MFT Crockford, qualifies as an "other source."  Crockford diagnosed Stephens with bipolar disorder, attention deficit disorder, a learning disorder, and dyslexia, and opined that Stephens' "clinical presentation is markedly impaired in occupational,

---

[5] Dr. Athale's finding that the claimant was unable to work given his limitations conflicts, for example, with Dr. Richard Palmer's determination that Stephens "is able to perform work activities on a consistent basis without special or additional instruction[.]" (*Compare* AR 460 *with* AR 356.)  Dr. Athale's testimony also conflicts with the findings of two State agency physicians, who concluded that Stephens could perform unskilled work.  (AR 360, 404.)

[6] While the Commissioner's briefing provides various explanations and citations to the record supporting the ALJ's finding, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the *ALJ*—not [post hoc] rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (emphasis added).

social and other relational areas related to his mental health diagnosis." (AR 624.) The ALJ discounted this finding, however:

> This unacceptable medical source's opinion is given little weight. Neither the record as a whole, nor any objective medical evidence, supports it. Just the claimant's ability to care for his daughter, provide her with a stable home, and his other daily activities are inconsistent with Ms. Crockford's extreme assessment of the claimant's mental limitations.

(AR 24).

Yet the conclusion that Crockford's opinions are inconsistent with Stephens' daily activities, specifically his ability to care for his daughter and provide her with a stable home, appears only partially supported by substantial evidence. Crockford's report and a June 2012 letter to the ALJ from Stephens' then-attorney, which both note that Stephens and his daughter became homeless for a period, call into doubt Stephens' ability to provide his daughter with a stable home. (AR 106, 623.) The record does, however, offer considerable evidence that Stephens has been able to care for his daughter on a daily basis.

The ALJ's explanation for discounting Crockford's opinion therefore meets the relatively low standard of being "germane to the witness." *See Talley*, 400 F. App'x at 169. Because the ALJ provides *at least one* reason germane to the witness—here, Stephens' capacity to care for his daughter—the ALJ did not improperly discredit Crockford's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a [witness's] testimony, but also provided valid reasons that were supported by the record").

C. <u>Failure Properly to Incorporate Finding of Moderate Deficits in Concentration, Persistence, or Pace.</u>

A hypothetical question posed to a vocational expert must include all of the claimant's functional limitations, both physical and mental. *Flores v. Shalala,* 49 F.3d 562, 570 (9th Cir. 1995). Here, the ALJ accepted medical evidence that Stephens has moderate difficulty

maintaining concentration, persistence, or pace. The ALJ's initial hypothetical question to the vocational expert, however, failed to mention these limitations. The Ninth Circuit has held that such an omission constitutes reversible error. *See Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (citation and internal quotations omitted).

Stephens also relies on *Brink* to argue that the ALJ erred by failing to incorporate his deficits in concentration, persistence, or pace into the mental RFC determination. *Brink*, however, only opines on the completeness of vocational hypotheticals; it does not stand for any similar proposition with regard to RFC determinations. Stephens has thus failed to show fault with the ALJ's RFC finding.

D. <u>Discounting of Stephens' Symptom Reporting.</u>

An ALJ's conclusion that a claimant's subjective pain or symptom reporting is not credible is reviewed for substantial evidence to ensure the claimant's testimony was not arbitrarily discredited. *Thomas,* 278 F.3d at 958–59. When evaluating a claimant's symptom reporting, the ALJ must first consider whether there is an underlying medically determinable impairment that "could reasonably be expected to produce the individual's pain or other symptoms." Soc. Sec. Ruling 96–7p (1996). If the claimant presents objective medical evidence of such an impairment and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so."[7] *Lingenfelter*, 504 F.3d at 1036 (citation omitted).

This requirement is unaffected by whether the claimant shows her impairment "could reasonably be expected to cause the severity of the symptom" identified. *Id.* The ALJ may consider the claimant's reputation for truthfulness, inconsistencies in his or her testimony or between his or her testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms alleged. *Thomas,* 278 F.3d at 958–59. The ALJ may not, however, discount a claimant's credibility based

---

[7] The "clear and convincing" standard "is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 279 F.3d 920, 924 (9th Cir. 2002).

wholly on a lack of medical support for the severity of his or her pain. *Light v. Comm'r of Soc. Sec.,* 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ in this case improperly discounted the credibility of Stephen's symptom reporting. After finding that Stephens' medically determinable impairments could reasonably be expected to cause his symptoms, the ALJ discounted the alleged severity of these symptoms with the following:

> The claimant's testimony regarding his daily activities is not consistent with disability, as defined by the Social Security Act, as amended. He is able to care for his six-year-old daughter with little help. He feeds her, dresses her, bathes her, plays with her, and takes her to the park. The claimant is able to prepare healthy meals and keep their home clean. He is able to take care of his personal needs and go shopping for groceries. The claimant's sister helps with their laundry only because the claimant does not otherwise have access to laundry facilities. He testified that he was laid off from his job because of a lack of work and collected unemployment benefits for a year after that.

(AR 24.) First, Stephens' statement regarding his termination is not a compelling reason to discredit his testimony. Stephens stated in his Disability Report that he stopped working due to his medical conditions. (AR 185.) He also testified, when asked why he stopped working, that "[t]hey said it was a lack of due to [sic] work." In fact, the ALJ herself noted that "[t]he claimant testified that he stopped working in October 2009 because *he was told* that there was a lack of work." (A.R. 22) (emphasis added). That Stephens was told he was fired for lack of work, however, is not inconsistent with his statement that he stopped work due to his health conditions. Indeed, Stephens could very well have been laid off because of his mental impairments—even if his employer provided a different, pretextual explanation.

Second, Stephens' ability to perform daily activities is not a clear and convincing reason for rejecting his credibility. The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility to as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citation and ellipses omitted). Instead, a claimant's testimony regarding his or her daily activities may discredit symptom reporting only if (1) the activities "meet the threshold for transferable work skills," or

(2) the activities contradict the claimant's testimony.  *See id.* (citation omitted).

By simply listing Stephens' daily activities, the ALJ fails to demonstrate that Stephens' testimony meets either prong articulated in *Orn*.  *See id.*  The ALJ does not describe how Stephens' daily activities are indicative of his ability to work.[8]  Stephens described difficulties concentrating and getting along with co-workers and supervisors.  Yet it does not appear that caring for his daughter, a responsibility permitting frequent breaks and the opportunity to rest, requires Stephens to concentrate for prolonged periods.[9]  *See Brink,* 343 F. App'x at 212 ("repetitive, assembly-line work . . . might well require extensive focus or speed").  Nor is it apparent how shopping for groceries and doing laundry require skills that are transferable to occupations such as hand packager or product assembler.  Absent additional information or analysis, it seems that Stephens' daily activities do not "meet the threshold for transferable work skills" or "contradict his testimony," for example, that he struggles to concentrate for longer than 15 or 20 minutes at a time.  (AR 207); *see id.*; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  The ALJ thus did not put forth an adequate basis for discounting Stephens' testimony.

---

[8] *See McCaa v. Astrue*, C 07-5322 RS, 2008 WL 4811456 (N.D. Cal. Nov. 5, 2008) (finding no clear and convincing evidence for rejecting the claimant's testimony where "the ALJ did not identify, except in broad terms, what testimony was not credible and what evidence undermined [claimant's statements] regarding her many symptoms").

[9] *See* Soc. Sec. Ruling 96-8p ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule"); *see also Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980) ("The ability to work . . . only on an intermittent basis is not the ability to engage in 'substantial gainful activity'").

E. Repudiation of Lay Testimony.

The ALJ also erred in not considering the testimony of Stephens' mother, Patsy Stephens. An ALJ must consider lay testimony concerning a claimant's ability to work, and such statements *"cannot* be disregarded without comment." *Stout v. Comm'r of Soc. Sec.,* 454 F.3d 1050, 1053 (9th Cir. 2006) (citation omitted) (emphasis in original). If an ALJ decides to discount witness testimony, the ALJ "must give reasons that are germane to each witness." *Id.* (citation omitted).

An ALJ's decision will not be reversed, however, for harmless error. *Id.* at 1054. Where an ALJ fails properly to consider competent lay testimony favorable to a claimant, the reviewing court may not consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056. When an ALJ fails to provide reasons for rejecting competent lay testimony and the district court determines the error was not harmless, the Commissioner's findings lack substantial evidence. *See id.* at 1056–57. The Ninth Circuit has never found an ALJ's "silent disregard of lay testimony about how an impairment limits a claimant's ability to work" to be harmless, and consistently reverses the Commissioner's decisions for "failure to comment on such competent testimony." *Id.* at 1055–56; c*ompare Van Nguyen v. Charter,* 100 F.3d 1462, 1467 (9th Cir. 1996) (reversing where an ALJ did not set forth reasons to discount lay witness testimony), *with Lev v. Astrue*, C 09-05074 RS, 2010 WL 3037261, at *6 (N.D. Cal. July 30, 2010) (affirming the ALJ's decision to discount lay witness testimony where the ALJ summarized both lay witnesses' statements and gave specific reasons for discounting the testimony).

The Commissioner argues that because "Plaintiff's mother's statements largely parrot Plaintiff's own statements concerning his alleged impairments," the ALJ's rejection of Stephens' statements applies equally to those of his mother. (ECF No. 20 17:18-20; 181:1-2.) To support this contention, the Commissioner relies on *Valentine v. Comm'r of Soc. Sec.,* 574 F.3d 685, 694 (9th Cir. 2009)*,* where the court upheld the ALJ's rejection of a claimant's wife's testimony because the ALJ provided a clear and convincing explanation for discounting the claimant's similar subjective complaints. In *Valentine,* however, the ALJ did not silently reject witness

testimony, but rather explicitly discounted the claimant's wife's testimony based on specific reasons already enumerated to discredit the claimant's testimony. *Id. Valentine* is thus better understood as allowing ALJs to reject lay witness testimony only with express reference to reasons already put forth to reject similar testimony and "t[ying] the reasoning of their credibility determinations to the particular witnesses whose testimony they reject." *Id.* The ALJ in the present case therefore improperly disregarded Stephens' mother's statements by failing to comment on her testimony.

The ALJ's rejection of Stephens' mother's statements was not harmless error. She testified that Stephens has a difficult time reading, managing a checking account, and getting along with others, and that he does not respond well to stress or changes in routine. (AR 195-98.) If credited, Stephens' mother's testimony could support a finding that the claimant is disabled. Indeed, 20 C.F.R. § 404.1545(c) provides that a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work." Moreover, the vocational expert testified that if an individual of Stephens' age, education, and past work experience struggled to concentrate ten to twenty percent of the time, such a limitation would preclude all work. It is thus unrealistic to conclude that no reasonable ALJ, when fully crediting Stephens' mother's testimony, could have reached a different disability determination. *See Stout,* 454 F.3d at 1056. Because the ALJ did not provide any reasons for rejecting competent lay testimony, and the error was not harmless, the Commissioner's subsequent findings lack substantial evidence. *See id.* at 1056-57.

F. Failure to Develop the Record**.**

The ALJ "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This obligation, however, is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Stephens contends that the ALJ failed to develop the record with regard to his learning disorders and their vocational consequences, as well as his lack of a high school education. (ECF No. 15, 22: 15-17.) While the ALJ may have erred by not accounting for all of Stephens' limitations in her final step-five determination, Stephens has not shown "there is ambiguous evidence," or that "the record is inadequate to allow for proper evaluation of the evidence." *See Mayes*, 276 F.3d at 459-60. Indeed, the record includes the testimonies of Dr. Athale, Dr. Palmer, and two separate State agency physicians. The record thus contains sufficient information upon which to base a disability determination.[10]

G) The Step Five Determination.

When a claimant meets the criteria for disability under the first, second, and fourth steps but does not meet the third, as in this case, he establishes a prima facie case of disability. *Thomas,* 278 F.3d at 955. The burden then shifts to the Commissioner to show the claimant can perform a significant number of other jobs in the national economy. *Id.* The Commissioner can meet this burden through VE testimony or reference to the Medical Vocational Guidelines. *Id.* Hypothetical questions posed to the VE, however, "must consider all of the claimant's limitations." *Light,* 119 F.3d at 793 (citation omitted).

As discussed, the ALJ in this case improperly (1) rejected the treating physician Dr. Athale's testimony; (2) omitted Stephens' acknowledged limitations as to concentration, persistence, or pace from the hypothetical presented to the VE; (3) discounted Stephens' symptom reporting; and (4) rejected the lay testimony of Stephens' mother. Because these errors cannot be deemed harmless, the ALJ's finding that Stephens is not disabled lacks substantial evidence and does not comport with legal standards. *See Stout,* 454 F.3d at 1056-57.

---

[10] Stephens correctly points out that the ALJ incorrectly stated that he has at least a high school education when he, in fact, does not. Because it appears that correct information as to Stephens' education level would not have changed the ALJ's final decision as to Stephens' ability to perform SGA, however, the mistake was harmless, and is nonreversible. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding the ALJ's inaccurate findings regarding claimant's age and education level were immaterial to the final decision and thus harmless).

Since additional proceedings can remedy the defects in the original administrative proceedings, remand is appropriate. *Lewin,* 654 F.2d at 635. While Stephens requests a finding that he is disabled, the present case is not one in which reversal is warranted. *See Terry v. Sullivan,* 903 F.2d 1273, 1280 (9th Cir.1990) (awarding benefit on appeal because of the case's "exceptional facts," in particular the claimant's age of 64 and the "very doubtful" likelihood the Commissioner would prevail on remand); *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). The instant case does not present the exceptional circumstances under which a reviewing court should make a disability determination.

## V. CONCLUSION

In light of all the aforementioned reasons, this matter is remanded to the ALJ to make findings consistent with this order, incorporate those findings into the RFC evaluation, and make a final step-five determination based on the full record.

**IT IS SO ORDERED**.

Dated: December 9, 2014

_____
RICHARD SEEBORG
United States District Judge